(No. 31975.—
MILDRED McGAUGHY, Appellee, *vs.* JIM T. McGAUGHY, Appellant.

*Opinion filed November 27, 1951—Rehearing denied Jan. 21, 1952.*

ALLEN & ALLEN, of Aledo, and EAGLE & EAGLE, of Rock Island, for appellant.

HEBEL, IVES & DAVIS, of Aledo, (GEORGE O. HEBEL, and MEREDITH H. DAVIS, of counsel,) for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

This appeal comes from the circuit court of Mercer County where the chancellor hearing the cause without a jury, decreed that the plaintiff was entitled to a divorce on the ground of extreme and repeated cruelty. It was further provided in the decree that she have one-half interest of all the real and personal property owned by

her husband and, also, share equally with him his indebtedness. The defendant, feeling dissatisfied with the trial court's determination on both issues—the divorce and property division—comes to this court for a review of the proceeding.

Mildred and Jim T. McGaughy were married on March 23, 1918. They are the parents of five children, all of whom at present are married and independent, and consequently pose no problem in this marital rift. On April 29, 1950, Mildred filed her suit for divorce, alleging that she had left home on April 18, 1950, and had not cohabited with the defendant thereafter; that her husband was the owner of real and personal property of a value in excess of $50,000; that he had threatened to dispose of his property and to harm her; that he was guilty of acts of extreme and repeated cruelty in September, 1949, and again in April, 1950. Without notice or bond, a writ of injunction was issued restraining defendant from transferring his property or molesting plaintiff. In her complaint, Mildred prayed for a divorce, attorneys' fees and expenses, and also, "That suitable alimony for the plaintiff and a portion of defendant's property and money be set off and apportioned to the plaintiff for her support." The latter paragraph becomes important when we reach for consideration the claim of the appellant that plaintiff failed to allege in her complaint any allegation of special circumstances whereby the trial court became justified in decreeing plaintiff a fee in defendant's real estate.

Giving attention to plaintiff's claim of mistreatment by the defendant, she testified that in the summer of 1949 her husband became angry with her while she was working in the kitchen; that with her head under his arm he dragged her out of the house into the back yard and struck her at the same time with his right hand; their youngest child, Jimmy, came from across the road and stopped his father; her glasses were bent and her cheeks were bleeding as a

result of the blows; that immediately thereafter she returned to the house to resume her work and defendant came toward her, pointing his finger menacingly, whereupon she let go a skillet that struck defendant near the forehead, bruising his right eye. Their feelings and wounds were soon mended, for the same day they went out and clerked a sale and performed very cordially. The second act of cruelty relied upon by plaintiff to establish her right to a divorce relates to a series of events on April 4, 1950. The plaintiff testified that defendant left home to work on a community telephone line and when he returned home in the evening at about 7:00 P.M. it was very evident that he had been drinking. He went to bed at 8:00 and she followed at 9:00 P.M. About midnight defendant woke up and demanded some coffee and plaintiff refused to make any for him; she said she was unhappy; then he wanted her to have sexual intercourse; she refused, asserting that she was not in the mood to be sociable since he "stunk and was drunk." Then the defendant began slapping and beating plaintiff, tearing her gown and otherwise was very ugly and cruel. Jimmy completely corroborated his mother's account of both acts of cruelty. He was asleep in an adjoining room on April 4, and said the quarrel lasted for an hour and one-half; that he had heard them talking loudly and that he heard his father cursing his mother and heard the sound of slapping on the flesh many times. Plaintiff and her son also testified that Mildred, on previous occasions, carried "shiners" as a result of Jim's cruelty. The defendant testified that Mildred was a good woman, a hard worker and a fine mother; that he did not intend to be mean to her and had not struck her; that plaintiff had misunderstood his friendly advances while they were in bed on the night of April 4, for he simply invited her to cuddle up close to him because his feet were cold.

After the last episode, the plaintiff concluded she was through. She did sleep in the same bed, there being no

other place to sleep. She refused to speak to her husband thereafter and left home to live with her daughter on April 18, 1950. It is seriously argued by appellant in his brief that all acts of cruelty were condoned. The defendant did not mention condonation in his answer. Condonation is an affirmative defense and should not be considered unless specially pleaded. (*Klekamp* v. *Klekamp,* 275 Ill. 98.) By-passing this technical answer to defendant's claim, we are of the opinion that plaintiff's attitude toward defendant from April 4 to April 18 did not possess all of the necessary ingredients of condonation. Her's was anything but a warm heart and a forgiving soul, but, on the contrary, cold and uncommunicative. In 14 A.L.R. at page 931, is found the definition of condonation which applies well to the instant situation, "including that operation of the mind evinced by words or acts known as forgiveness—the free, voluntary, and full forgiveness and remission of a matrimonial offense and unless it is accompanied by that operation of the mind, even cohabitation without fraud or force is insufficient to establish a condonation."

We are not disposed to disagree with the trial court in his finding that plaintiff is entitled to a divorce. He saw and heard the witnesses and had an opportunity to observe the many landmarks that point the way to the truth. It does strain one's credulity, however, to believe that an able bodied, robust son, such as Jimmy, would lie idly by and permit his drunken father to strike his mother so many times in anger without a single word or act of protest.

The remaining issue that is more troublesome is the propriety of the court's conclusion that Mildred should have one half of all the property, both real and personal, owned by the defendant. There is involved 440 acres of land. It is most important to a correct analysis of the problem to trace fully and completely the history of the acquisition of the property. The defendant, Jim McGaughy, was the only child of William and Priscilla McGaughy. William

owned considerable land, and when the parties to this suit were first married they moved onto one of the well-improved farms of Jim's father. William died in March, 1934, and a number of his farms, including the one on which Jim and Mildred lived, were lost in the economic storm of that time.

The 400 acres involved in this proceeding were owned by Jim's father in his lifetime and were sold at a partition sale on February 23, 1935. The record fails to disclose whether Jim's mother had any interest in the partition proceedings. However, she became the purchaser at that sale. The record is not clear as to the exact purchase price or the precise amount of the down payment paid by her. The testimony of Mildred on the trial throws some light on the inquiry as to what the mother paid for the 400 acres. Question: "And Mrs. McGaughy bought the farm that is in controversy now, except the 40 acres, is that correct?" Answer: "Yes. Mrs. McGaughy paid $38,000 or $36,000 or $34,000 for the farm at the sale. Mrs. McGaughy bought Tract 1 at a master's sale on February 23, 1935, for $13,005. There were two other tracts she bought at that time for $15,000. The McGaughy estate lost the home where Jim's mother had been living." Mildred further testified as follows: "I feel that I should have the home. I think the home place would bring $350 per acre. Tract 2 would bring $125 an acre. Tract 3 would bring $100 an acre. We got about 4000 bushels of corn from Tracts 1 and 2 on an average over 10 years. I would need $350 a month to live on." It also appears that Priscilla McGaughy obtained a loan at the time of the purchase in the sum of $11,000 which was secured by a mortgage on the farm. Mildred and her mother and Jim and their five children lived on this farm from 1935 to the date of the present difficulty. They farmed the 400 acres, fed and sold cattle and hogs, and made payments on the mortgage indebtedness until at the time of the trial it was reduced

to $4000. Mrs. McGaughy, Sr., did not receive any revenue from the farm whatsoever. She paid some on the mortgage but the record does not disclose the exact amount.

Priscilla McGaughy conveyed this land to her son on September 1, 1948, reserving unto herself a life estate. She died on February 17, 1949. It was admitted that the remaining 40 acres were purchased by Jim at a private sale with money derived from the operation of the farm.

It is contended by appellant that in a decree for a divorce ordering a conveyance of real estate by the defendant to the plaintiff there should be a reversal where there are no allegations of fact in the complaint justifying a conveyance. In support of the proposition many cases are cited: *Marcy* v. *Marcy*, 400 Ill. 152; *Skoronski* v. *Skoronski*, 395 Ill. 301, and others. In most of these cases no claim was made for anything but divorce.

As noted, heretofore, the plaintiff claimed in her complaint as follows: "That suitable alimony for plaintiff and a portion of defendant's property and money be set off and apportioned to the plaintiff for her support." The defendant in his answer set forth the facts pertaining to the acquisition of the property involved, thus indicating his knowledge of his wife's claim to a portion of his property. We are of the opinion that the pleadings in this case were sufficient to properly present the issue of alimony in gross. This is particularly true since the 1949 amendment of section 18 of the Divorce Act, wherein, under that section, the court is given the power to order a conveyance of property in lieu of alimony without the strictness of pleading and proof. Section 18 (Ill. Rev. Stat. 1949, chap. 40, par. 19,) provides as follows: "When a divorce shall be decreed, the court may make such order touching the alimony and maintenance of the wife or husband, the care, custody and support of the children, or any of them, as, from the circumstances of the parties and nature of the case, shall be fit, reasonable and just. *The*

*court may order the husband or wife, as the case may be, to pay to the other party such sum of money, or convey to the party such real or personal property, payable or to be conveyed either in gross or by installments as settlement in lieu of alimony, as the court deems equitable.* Irrespective of whether the court has or has not in its decree made an order for the payment of alimony or support, it may at any time after the entry of a decree for divorce, upon obtaining jurisdiction of the person of the defendant by service of summons or proper notice, make such order for alimony and maintenance of the spouse, and the care and support of the children as, from the evidence and nature of the case, shall be fit, reasonable and just, but no such order subsequent to the decree may be made in any case in which the decree recites that there has been an express waiver of alimony or *a money or* property settlement in lieu of alimony or where the court by its decree has denied alimony. In any order entered pursuant to this section, the court may order the defendant to give reasonable security for such alimony and maintenance, *or such money or property settlement,* or may enforce the payment of such alimony and maintenance *or such money or property settlement* in any other manner consistent with the rules and practices of the court, where a party willfully refuses to comply with the court's order to pay alimony and maintenance *or to perform such money or property settlement, or has shown himself unworthy of trust.* No alimony or separate maintenance shall accrue during the period in which a party is imprisoned for failure to comply with the court's order. A party shall not be entitled to alimony and maintenance after remarriage; *but, regardless of remarriage by such party or death of either party, such party shall be entitled to receive the unpaid instalments of any settlement in lieu of alimony ordered to be paid or conveyed in the decree.* The court may, on application, from time to time, make such alterations in the allowance of alimony

and maintenance and the care, custody and support of the children, as shall appear reasonable and proper." The italicized parts did not appear in the statute prior to the 1949 amendment.

It is clear that the added provision confers express authority upon a court to enter a decree providing for payment of money or conveyance of property, either real or personal, in gross or in installments, in lieu of alimony, as the court deems equitable and fair. The amendment was designed to remove any doubt of the court's right to do so. (*Persico* v. *Persico,* 409 Ill. 608.) Parenthetically, it might be added that the statutory enactment also had for its purpose the solution of problems confronting the court in the cases of *Hotzfield* v. *Hotzfield,* 336 Ill. App. 238, and *Walters* v. *Walters,* 409 Ill. 298, 99 N.E. 2d 342.

This brings us to a consideration of the propriety of the decree entered herein that plaintiff was entitled to one half of defendant's property. The facts underlying this determination are these: The plaintiff was unquestionably a very thrifty and industrious woman; there was nothing around the farm that she could not and did not do; she not only performed the chores on the farm but she filled the shoes of a farmhand; and she often said she would prefer to do the work of a farmhand than to cook, wash and make beds for him. Mr. and Mrs. McGaughy would drive the tractor, till the soil, plant the seed and harvest the crops. They fed hogs and cattle, milked a large herd and did everything needed to be done on a stock and grain farm. Ofttimes Jim would help in the house, prepare meals and wash dishes. For the most part the girls did most of the housework.

The defendant was a man not altogether without a few virtues. He was honest, industrious and faithful to his family, being constantly interested in their well-being and comfort. He testified that he never knew that his wife was charging him with cruelty until he talked to her attorney;

that the morning following the April 4th episode the only complaint that she made was about his drinking; that their principal difficulty stemmed from the fact that she was constantly demanding from him a deed to one half of his real estate. Two sisters of defendant's mother testified that Mildred came to Priscilla McGaughy and requested that the farm in question be deeded by her to herself or, in the alternative, to herself and her son Jimmy. The defendant admitted that the relationship between him and his wife had become somewhat strained since the early part of 1950. Jim and his wife and some neighbors had discussed and planned on the purchase of a tract of land near their farm which was to have been sold at a master's sale in the near future. On December 1, 1949, Jim and Mildred and friends, including a Mr. Watt, attended the master's sale, and Jim was the successful bidder. Watt loaned Jim the down payment. Then Jim negotiated with the land bank for a loan and received from them a draft in the sum of $19,008.80. Then Mildred became a victim of one of her demanding or stubborn spells and said "I'm not going to sign anything," and then she said she would not sign unless she was deeded one-half interest in the entire 600 acres, that is, the 440 and 160. Jim offered to give her one half of the 160 acres, the land that they had just purchased at the master's sale, but this did not appeal to Mildred, so the whole deal had to be abandoned. Attorneys for appellee weakly defend the conduct of Mildred by saying that she was unwilling to sign too many notes, for that had been the cause of previous failures of both her husband and her husband's father. Certainly, it would have been appropriate for Mildred to have become safety conscious before all the plans had been made by her and Jim to attend the sale and make the purchase.

The 400-acre tract of land came from Jim's father and mother. At the time Jim's mother purchased this farm at a partition sale, Jim was worse than broke. Soon there-

after he went into bankruptcy. The mortgage indebtedness on the farm was reduced from $11,000 to $4000 through the joint efforts of Mildred, Jim and his mother. The 40-acre tract of land was purchased from earnings derived from the farm. Mildred testified at the trial that, in her opinion, the value of the land was $77,300 and that she wanted tract No. 1 which was worth, in her opinion, $41,300. In addition to the real estate, the defendant had a car, truck and farming implements, and was obligated on a note in the sum of $2100.

Several realtors, farmers and bankers testified about the value of the land. It was agreed that tract No. 1 was worth considerably more than tracts 2 and 3 combined. It was also agreed that tract No. 1, without tracts 2 and 3, would be of less value. The entire acreage should be farmed as one unit. The home place, which consists of 118 acres, has the improvements and tillable ground while the other tracts are principally pasture land. It is essentially a stock and grain farm and its greatest utility lies in its being operated as such, and under one management with one set of implements and one program of stock raising and feeding. To give Mildred one half of the real estate would be tantamount to taking away from Jim an opportunity for him to continue in the only business that he knows anything about.

To sustain the decree with reference to the property apportionment, appellee relies upon the case of *Shekerjian* v. *Shekerjian,* 346 Ill. 101. In that case, the parties had been married twenty years and the wife had helped her husband constantly in his business and had worked continuously in the accumulation of their estate. The court ordered the defendant to convey to the plaintiff all of the only real estate he had, and, at page 104, this court said: "The right and power of a court of equity to assign as alimony to the wife a part or all of the real estate of the husband in fee has been frequently declared by this court.

(*Engler* v. *Engler,* 313 Ill. 527; *Meighen* v. *Meighen,* 307 Ill. 306.) This power is properly exercised wherever special circumstances exist justifying such a decree. (*Bergen* v. *Bergen,* 22 Ill. 187; *Armstrong* v. *Armstrong,* 35 Ill. 109; *Champion* v. *Meyers,* 207 id. 308.) The proof here showed that the defendant at the beginning of his marital troubles had total assets in his name of over $43,000. The decree entered.by the chancellor gave to the wife real and personal property aggregating about one third of that amount. She was entitled to a home for herself and child, and under the special circumstances shown by the proof, the chancellor properly included the real estate as part of her award, in lieu of other alimony payments."

In the case of *Anderson* v. *Anderson,* 380 Ill. 435, at pages 440 to 441, this court said: "Where, however, the wife has from equitable considerations, other and additional interests in her husband's property than such as attach to her status as a wife, as for example, * * * if the real estate represents the joint earning, work or savings of the parties, the court may properly, when dissolving the marriage relation, decree that the wife shall be vested with the title in fee to such real estate * * * belonging to the husband, in order to effect an equitable and fair adjustment of the property rights of the parties. The right and power of a court of equity under such circumstances to assign to the wife a part of the real estate of the husband in fee has been settled by numerous decisions." [Citing cases.]

It will be observed that in the *Shekerjian case* the wife assisted her husband in his business and was materially helpful in the accumulation of his entire estate, yet she was given only one third of his property. It is undisputed that plaintiff contributed nothing toward the acquisition of the 400 acres. This property came from Jim's mother. It was she who acquired it and, whatever amount was paid down on the purchase price, it was paid by her and

not by Jim or Mildred. Mildred did assist in lifting $7000 of the mortgage indebtedness and she did contribute her share in the purchase of the 40-acre tract. But all of this was accomplished because Jim's mother permitted Jim, his wife, his wife's mother and five children to occupy her farm rent free for more than fifteen years. Nowhere in the record does it appear how much was paid for the 40-acre tract of land. At the trial there was testimony that land of comparable quality sold for $103 per acre. Accordingly, the 40-acre tract had the value of $4000.

In the case of *Bissett* v. *Bissett,* 375 Ill. 551, a divorce was granted to the wife on the ground of cruelty. A hearing was then had on the question of alimony. The trial judge awarded real estate to the wife and this court, in reversing the ruling, had the following to say: "The general rule in this State is that in a divorce proceeding the court will not transfer to the wife, who has prevailed in the suit, the fee-simple title to real estate of which the husband is seized, unless the wife shows special equities which would justify it. (*Byerly* v. *Byerly,* 363 Ill. 517.) Where the wife makes no contribution to the acquiring of real estate a conveyance to her upon a divorce is not justified, except only in cases of special equity. (*Lipe* v. *Lipe,* 327 Ill. 39.) The usual and proper practice, unless special circumstances justify a different course, is to give the wife an allowance, under the control of the court, and not vest the fee of real estate in her. A claim that arises from the marriage relation, alone, is not sufficient. (*Meighen* v. *Meighen,* 307 Ill. 306.) Where special equities are claimed, justifying the conveyance of the husband's property to the wife, the special circumstances must be alleged in the complaint and established by proof. * * * The evidence shows appellant had considerable money on hand and other property, and has enjoyed a good income. Under such a showing, no necessity existed for the court

to refuse to fix alimony, and no special equities requiring the conveyance of the husband's property to the wife."

Helpfully, we might consider further what the court had to say in the case of *Anderson* v. *Anderson,* 380 Ill. 435: "Under the statute of this State, the general rule is that a court hearing a divorce proceeding will not transfer to the wife, who has prevailed in the suit, a fee simple title to real estate of which the husband is seized, unless the wife shows special equities which would justify it. (*Bissett* v. *Bissett,* 375 Ill. 551; *Byerly* v. *Byerly,* 363 id. 517; *Wilson* v. *Wilson,* 102 id. 297; *Ross* v. *Ross,* 78 id. 402.) A claim that arises from the marriage relation alone is not sufficient. If the wife has no other claim than that which arises from the marriage relation, she should not be awarded the real estate of her husband in fee; the usual and proper practice is to give the wife an allowance as alimony, to remain under the control of the court, and not to vest the fee of real estate in her. (*Meighen* v. *Meighen,* 307 Ill. 306; *Shaw* v. *Shaw,* 114 id. 586; *Robbins* v. *Robbins,* 101 id. 416; *Keating* v. *Keating,* 48 id. 241.) Where the wife makes no contribution to the acquiring of the real estate, the court would not be justified, upon granting a divorce to her, in decreeing the title of the husband's land to her except in cases of some special equity arising out of the particular facts in the case. *Lipe* v. *Lipe,* 327 Ill. 39; *Giesler* v. *Giesler,* 336 id. 410; *Soltysik* v. *Soltysik,* 317 id. 247."

Particularly applicable is the language employed by this court in the case of *Byerly* v. *Byerly,* 363 Ill. 517, where the wife, on appeal, complained that she had not been awarded part of her husband's real estate as alimony: "Finally, it is urged by the plaintiff that the court should have allowed her in fee simple, as alimony, a part of the real estate owned by her husband. The court secured the payment of alimony awarded by making the same a lien

upon three of the six pieces of the husband's real estate. The general rule in this State is, that in a divorce proceeding the court will not transfer to the wife, who has prevailed in the suit, the fee simple title to real estate of which the husband is seized. Here the plaintiff did not make a case showing any special equities which would at all justify a court in awarding any portion of her husband's real estate to her. It is only in that situation that the court is warranted in transferring the title of the husband's lands to the wife."

In the case of *Wheeler* v. *Wheeler,* 18 Ill. 39, an award of real estate as alimony in gross was affirmed by this court because the husband had fled from the State with his personal property. And in the case of *Lipe* v. *Lipe,* 327 Ill. 39, the husband was permitted to keep his farm, but the wife was given a 1½-acre tract in the village of Irving as alimony in gross. In affirming the decree, this court pointed out that the wife had actually put $4500 into the land and that the husband was deeply in debt and had no money with which to pay alimony. Such are examples that have been brought to our attention of special circumstances where the court has found it proper to take real estate from one spouse and give it to the other. Applying the foregoing principles of law and equity to the problem under consideration, and giving due regard to the amended section 18 of the Divorce Act, we are of the opinion that the decree entered herein does not represent a fair and equitable determination of the rights of the parties. The record fails to disclose any special circumstances, equities or reasons for splitting up the defendant's farm and taking away from him his only means of livelihood. The ordinary and better method of awarding alimony is by periodic allowances, payable at such intervals as may best suit the convenience of the husband and meet the demands of his wife.

Accordingly, the decree for divorce is affirmed and the decree giving the plaintiff one-half interest in all the defendant's property is reversed and the cause is remanded, with directions to enter a decree allowing plaintiff alimony and support money as the chancellor deems fair and equitable and not inconsistent with the views expressed herein.

*Affirmed in part and reversed in part, and remanded, with directions.*