(No. 32955.—

MYRTLE YLONEN, Appellee, *vs.* GEORGE YLONEN *et al.,* Appellants.

*Opinion filed January 20, 1954.*

RITSOS & RITSOS, of Chicago, (G. A. BOSOMBURG, of counsel,) for appellants.

ROBERT R. PORTO, of Chicago, (HARRY G. FINS, of counsel,) for appellee.

Mr. Justice Daily delivered the opinion of the court:

This is an appeal from a decree entered by the superior court of Cook County in a proceeding commenced by Myrtle Ylonen, the appellee, against her husband, George Ylonen, who is the principal appellant, for a divorce, for an accounting and for partition of three parcels of real estate, allegedly accumulated through the mutual efforts of the husband and wife, of which appellee claimed to be the equitable owner of a one-half interest. The record shows that prior to the marital difficulties of the parties, appellee had once appeared as the sole owner of record of one of the parcels of land involved and, later, as the sole beneficiary of a trust agreement executed with respect to it. As to the other two parcels, it appears that they were conveyed directly by the sellers to a trustee and that, ultimately, the trust agreements with respect to them provided in one instance that the beneficial interest was vested in appellee and her son as joint tenants and in the other that the beneficial interest was vested in appellee and appellant Ylonen, hereinafter called appellant. In all of said trust agreements, it was provided that the trustee would deal with the title to the land upon the written direction of appellant. Accordingly, on November 18, 1948, appellant, unknown to appellee, directed the trustee to convey all of the real estate to one Peter W. Paganis who, it appears, was an accountant for appellant. On the same day, the trustee executed two trustee's deeds conveying all the real estate in question to Paganis, and the latter, together with his wife, executed two deeds in trust to the Liberty National Bank of Chicago as trustee. The trust agreements in each instance provided that the owners of the beneficial interest in the real estate were Mike and Otto Ylonen, brothers of appellant, and Otto's wife, Impi Ylonen. Both of said agreements also provided that the trustee would deal with the title to the lands upon the written direction of appellant. With the title in this state, appellee made the

trustee and Mike, Otto and Impi Ylonen parties defendant to the cause, but Mike Ylonen, a resident of Michigan, was never served with process nor did he submit himself to the jurisdiction of the court. On this appeal, George Ylonen is the principal appellant and has been joined only by the trustee.

Appellee's complaint was filed on February 14, 1950, and three days later the cause was referred to a master in chancery for determination of matters relating to temporary alimony, temporary attorney's fees, costs, and the property rights between the parties. There followed numerous pleadings, counterpleadings and amendments wherein appellee charged her husband with habitual drunkenness and adultery and he countered with charges of desertion and adultery. On this issue, the chancellor, after a hearing in open court and upon an interim report of the master relating to attorney's fees, entered a decree of divorce on September 19, 1952, on appellee's complaint. This decree is not attacked on this appeal. In addition to dissolving the bonds of matrimony, the said decree confirmed the previous order of reference to the master and further referred to him questions of alimony, property rights, fees and costs, and the issues of partition. After numerous hearings, the master filed his report which, for the most part, was confirmed by the chancellor who, on April 9, 1953, entered the order from which this appeal is taken and which, in substance, provides as follows:

(1) That the court has jurisdiction of the subject matter and of the parties, except Mike Ylonen.

(2) That appellee has proved the allegations of her complaint and that the equities are with her.

(3) That appellant pay appellee $175 a month as temporary alimony retroactive to January, 1953, and until appellee shall receive her fair share of the proceeds of the partition of the real estate here involved.

(4) That appellant and appellee each equally owns an undivided one-half interest in each of the three parcels of real estate involved.

(5) That appellant forthwith cause the trustee-bank to convey to appellee an undivided one-half interest in each parcel of real estate and that in the event of his failure to do so, the master is empowered to accomplish such conveyance.

(6) That appellant pay appellee one-half the proceeds realized from the sale and liquidation of a business referred to as the Eddy Stoker Company.

(7) That appellant pay $5000 additional attorney's fees for services rendered to appellee in the cause; that he pay $406.95 due on the transcript of evidence; and that he pay the master's fees and charges.

(8) That appellant is entitled to a credit of $7600 to be deducted from the share and interest of appellee.

(9) That defendants Otto and Impi Ylonen have no right, title or interest in the said real estate and that their claims are forever terminated and barred.

(10) That said decree is entered without prejudice to the right, title and interest of Mike Ylonen.

(11) That the court reserves jurisdiction over the cause to adjudicate the rights of Mike Ylonen in and to the real estate involved.

(12) That the court retains jurisdiction to enforce the provisions of the decree and to order such other and additional decrees and orders pertaining to the partition of the real estate.

At the onset of this appeal we are confronted with a contention by appellee that this court does not have jurisdiction for the reason that the order appealed from is not final and appealable, the appellee saying that the cause is still pending in the superior court for the purpose of determining the rights of Mike Ylonen, who is represented as

being a "necessary party" to the partition proceedings. The primary object of partition is to enable those who own property as joint tenants, coparceners or tenants in common to sever their interest so as to vest in each a sole estate in specific property or an allotment of the lands and tenements so that each may take possession of and enjoy and improve his separate estate at his own convenience and pleasure. (*Schuck* v. *Schuck,* 413 Ill. 390; *Bowman* v. *Austin,* 393 Ill. 593; *Webster* v. *Hall,* 388 Ill. 401.) The order here appealed from seeks to create, rather than sever, a joint estate. It is also the rule that the plaintiff in a partition proceeding must either allege facts showing a legal estate in himself at the time of filing the complaint, or allege facts which show that he is the equitable owner, with such additional circumstances as would justify a court of equity in vesting in him a legal estate by decree of court, which, in the same proceeding, may be made the subject of partition and division among the interested parties. (*Harris* v. *Ingleside Bldg. Corp.* 370 Ill. 617.) While it has been stated that the line of cleavage between final and interlocutory orders is not yet scientifically prescribed, (2 I.L.P., Appeal and Error, sec. 106,) this court has held that an order may be a final and appealable determination even though matters of substantial controversy remain to be disposed of in the trial court, examples being when the order appealed from determines the ultimate rights of the parties with respect to distinct matters which have no bearing on other matters left for further consideration, or leaves for future determination matters which are merely incidental to the ultimate rights which have been adjudicated by such order. (*Altschuler* v. *Altschuler,* 399 Ill. 559; *Roddy* v. *Armitage-Hamlin Corp.* 401 Ill. 605; 2 I.L.P., Appeal and Error, sec. 107.) We think it apparent in this cause that Mike Ylonen's rights as a beneficiary under the trust and his rights upon partition are distinct from appellee's claim, under section 17 of the Divorce Act, (Ill. Rev. Stat. 1949,

chap. 40, par. 18,) for an adjustment of equities in the property as against her husband and the trustee in whom her husband had caused legal title to be vested. We hold, therefore, that that part of the order appealed from which disposes of the merits of the case on a separate and distinct branch thereof, namely the controversy as to whether, as between the husband and wife, part of the legal title should equitably be in the appellee wife is final and appealable.

The general rule in this State is that in a divorce proceeding the court will not transfer to the wife, who has prevailed in the suit, the fee-simple title to real estate of which the husband is seized, unless the wife shows special circumstances and existing equities which justify it. (*Persico* v. *Persico,* 409 Ill. 608; *Anderson* v. *Anderson,* 380 Ill. 435.) Where special equities are claimed, justifying the conveyance of the husband's property to the wife, the special circumstances must be alleged in the complaint and established by the proof. (*Bissett* v. *Bissett,* 375 Ill. 551; *Geisler* v. *Giesler,* 336 Ill. 410.) In the present case, appellee alleged that the real estate in question and the Eddy Stoker Company were acquired by herself and her husband through mutual help, assistance and labor, with the intention and purpose that the parties share them equally, and that appellant, by various and devious conveyances, defrauded appellee of her interest in the property and eliminated her from the chain of title by a succession of trust deeds and arrangements in the names of nominal parties over whom he maintained control. While recognizing the authorities referred to above, it is appellant's contention that appellee's evidence fails to support her pleadings or the decree, for the reason that it fails to establish the special circumstances and existing equities required to justify such a conveyance. It is likewise his claim that the evidence in the record shows that the majority of the funds used to purchase the real estate and the stoker company came from resources of his own that were inde-

pendent of the income realized from the joint labors of the parties. Further, we find that appellant claimed below, unsuccessfully, that he placed title to one of the disputed properties in appellee, and vested in her a beneficial interest in the others, because he had various creditors and had lawsuits pending against him.

In cases of this nature, we have held that where property is held by one of the parties to a divorce proceeding which has been accumulated by the joint efforts of the two or by the funds of both, then such property should be divided according to such equity as exists between them. (*Nowogurski* v. *Nowogurski,* 404 Ill. 276; *Killebrew* v. *Killebrew,* 398 Ill. 432.) In the present case, the evidence offered to both establish and rebut existing equities and special circumstances is long and arduous and we see no justification for detailing it at length in this opinion. Suffice it to say that our examination of the record discloses clear and convincing evidence that the property involved, both real and personal, was accumulated and maintained through the joint efforts of the parties. The parties' original venture was the operation of a rooming house under a lease, the burden of which fell largely upon the appellee. After a period of about five years they purchased a thirty-four-room house which was also operated as a rooming and boarding home, both parties executing a mortgage and title being taken in appellee's name. The parties then continued to operate both rooming houses. In 1940 they entered into a business venture under the name of Eddy Stoker Service which, the evidence shows, was successful. In connection therewith both had authority to write checks on the firm account and when the business was registered with the county clerk in September, 1941, appellee was shown as the sole proprietor. During April, 1945, an apartment building was purchased and remodeled into a rooming house. This property was conveyed directly to a trustee and although the original trust agreement vested

only an undivided one-half of the beneficial interest in appellee and her son by a previous marriage, a later assignment gave them all the beneficial interest. Early in 1946 the parties disposed of their original leasehold and moved to one of their other properties. During May, 1947, they made arrangements to purchase a 280-acre farm near Antioch, Illinois, and, after a loan, which both parties guaranteed, was procured, the farm was conveyed to a trustee, the beneficial interest being lodged in appellee for life, then to her son. Throughout all these transactions, there were many manifestations that it was the intention of the parties that they share the properties equally. However, as previously described, these manifestations ceased when appellant directed the creation of the trust agreements, previously described, which divested appellee and her son of any beneficial interest, and, in 1949, when the stoker business was sold and the sale price pocketed by appellant.

In connection with all the properties described, and the stoker business, the evidence reflects that appellee performed many constant and difficult tasks, particularly in connection with the rooming house operations from which their financial success originally stemmed. She performed office work for the stoker business and upon occasion did such physical labor as assisting in the unloading of trucks and in the dismantling and cleaning of stoker transmissions. When the farm was acquired, she rendered extensive and continuous services, such as operating equipment and tending to animals. Appellant attempted to minimize the services performed by appellee, but disinterested witnesses gave support to her testimony.

Appellant argues that appellee gave no financial assistance in the purchase of the disputed properties. While it is true that appellee did not actually pay out any money at the time of each purchase, the record shows that as funds were accumulated from the operation of the room-

ing house held on lease, they were saved and eventually used for the purchase of the second rooming house. Funds accumulated from both sources were used to purchase and remodel the third rooming house and to purchase the stoker company. A combination of all this income was used to make the down-payment on the farm. Thus it must be said that appellee made financial contributions which were derived directly from the services rendered in the operation of their ventures. There is evidence, too, that appellee added to the financial betterment of the parties by the economy and frugality of her way of living. In connection with the financing, we note, too, that appellant's efforts to establish that he had made the purchase with moneys obtained from other sources were almost entirely discredited.

A consideration of the entire record causes us to conclude that the appellee's evidence amply supports the allegations of her complaint and that it is more than sufficient to warrant the finding that she is entitled to the conveyance and division of property that was ordered. This conclusion is strengthened by the application of the observation contained in *Bissett* v. *Bissett,* 375 Ill. 551, that the facts shown upon the issue of the divorce have a bearing upon the equities of the parties in their property, for here the decree of divorce, which is not contested, found appellant guilty of repeated acts of adultery.

Appellant's next contention is that the allowance of $5000 additional attorney's fees in the decree appealed from is unauthorized for the reason that it was for services rendered in the partition count, to which he made a substantial defense in good faith, (see *Harrison* v. *Kamp,* 403 Ill. 542, at 547,) or, in the alternative, that the fee is excessive. As regards appellee's attorney's fees, the master made the following finding and recommendation: "The decree entered in this cause on September 19, 1952, directs the Master to fix the amount of attorney's fees due plaintiff

Myrtle Ylonen. The Master has heretofore prepared and filed in this cause on November 9, 1951, an interim report which recommended that plaintiff be allowed the sum of $2000.00 as temporary attorney's fees. In that report the Master found that the testimony on the subject of attorneys fees showed that plaintiff's attorney was entitled to the sum of $7,150.00 which would constitute fair and reasonable compensation. The Master is not advised as to the nature and extent of the services rendered by plaintiff's attorney in connection with the actual trial of this cause which resulted in the decree of September 9, 1952, other than the fact that the decree shows in some detail the commission of various adulterous acts by the said George Ylonen. In view of the testimony already submitted to the Master and under all of the circumstances in this case, the Master is of the opinion that a total allowance of fees to plaintiff's attorney in the sum of $5,000.00 reflecting all services rendered in this cause by said attorney would be a very moderate allowance. The Master accordingly recommends that the court allow plaintiff attorney's fees in the sum of $5,000.00 exclusive of such additional amounts as may be proved by plaintiff in connection with partition of the real estate herein involved." The sentence last quoted completely rebuts appellant's argument that the additional fee complained of related to services rendered on the partition count and, furthermore, as was pointed out earlier in this opinion, the issues of partition were not reached by the court but were reserved for future consideration.

It has long been the rule in this jurisdiction that the allowance of solicitors' fees in a divorce proceeding rests in the sound discretion of the trial court, and unless such discretion is clearly abused, its exercise will not be interfered with. (*Blake* v. *Blake*, 80 Ill. 523; *Byerly* v. *Byerly*, 363 Ill. 517.) The entire question of attorney's fees was, from the finding heretofore quoted, apparently the subject of the interim report previously filed by the master,

Appellant has not seen fit to abstract this report nor shall this court search the record for it. Further, the decree appealed from refers to the fee allowed as being an additional fee and, while the interim report apparently recommended a temporary fee of $2000, there is nothing in the abstract which shows that it was ever allowed or which explains the court's description of the $5000 fee as "additional." Because of the circumstances under which the issue has been presented to this court, we must refuse to interfere with the discretion exercised by the chancellor.

Objection is also made by appellant to the provision of the decree which allows appellee $175 a month temporary alimony retroactive to January, 1953, when the master's report was filed, until such time as appellee shall receive her share of the partition of the real estate. Prior to the time of the decree appellant had, by agreement, been paying appellee $100 per month and allowing her the occupancy of an apartment. Appellant's first argument, namely that the effect of the court's order is to award alimony in a decree for partition, is subject to the observation heretofore made that the decree was not one of partition. His second argument is that section 15 of the Divorce Act authorizes temporary alimony only for the period before a decree of divorce is entered. (Ill. Rev. Stat. 1949, chap. 40, par. 16; Jones Ann. Stat. 109.183.) No analysis of the statute or citation of authority accompanies this contention and our examination of the section does not disclose that the section is couched in the narrow terms suggested. What the section says is, that "in every suit for a divorce the wife or the husband when it is just and equitable, shall be entitled to alimony during the pendency of the suit, provided * * *." Inasmuch as the court in this cause was adjusting the equities in the ownership of property, as authorized by section 17 of the Divorce Act, and by its decree retains jurisdiction until the order to convey is complied with, it is our conclusion that the suit

is pending within the meaning of the statute to that extent and that it was fair, just and proper for the chancellor to award temporary alimony for that period.

Appellant makes a mild contention that the amount of alimony is excessive. However, from all the evidence of the financial condition of the parties, and their previous agreement, we see no abuse of discretion in the figure fixed by the chancellor.

It is also contended on this appeal that the trial court erred in assessing the master's fees against appellant and in ordering him to pay for the balance due on the transcript of evidence. The general rule, as stated in 27 C.J.S., Divorce, sec. 196, is that the awarding of costs in divorce actions is not a matter of right but rests in the sound discretion of the court. The decree of divorce entered in the cause expressly shows that it was repeated adulterous acts of appellant which precipitated the proceeding and made necessary an adjustment of the parties' equities in the properties involved. Under these circumstances and in light of the fact that it is, with few exceptions, customary for the defeated party to pay the costs of the litigation, we hold that the chancellor did not abuse his discretion in ordering appellant to pay the fees and costs complained of.

The last contention advanced by appellant is that the court erred in approving the master's report for the reason that his findings and recommendations are not supported by the evidence. In *Zilvitis* v. *Szczudlo,* 409 Ill. 252, we pointed out that "Without regard to the findings of the master upon any particular question of fact, the final question in this court is, Was the decree rendered by the court a proper one under the law and evidence?" Our examination of the evidence in this case leads us to conclude that the equities are with the appellee, as previously shown, so far as they relate to an adjustment of her rights in the property as against her husband, and we approve and affirm that part of the decree which awards her an undivided one-half interest in

his real estate, and which may carry into effect the consummation of transfer under such award, except as it may affect the parties hereinafter named.

However, we must hold that Mike Ylonen, who was not served to appear, and who did not appear herein, was a necessary party to an adjudication of those issues raised by appellee in this cause which related to the matter of setting aside or cancelling the trust agreement in which Mike, Otto and Impi Ylonen were made beneficiaries and we reverse that part of the decree which in any way affects their interests in said property.

The decree is affirmed in part and reversed in part and the cause is remanded to the superior court of Cook County with directions to proceed in accordance with the views expressed in this opinion.

*Affirmed in part and reversed in part*
*and remanded, with directions.*