Anna Collinet, Plaintiff-Appellant, v. Harold Collinet, Defendant-Appellee.

Gen. No. 48,209.

First District, First Division.
May 26, 1961.

Garretson, Lehmann & Thornquist, of Chicago (James L. Garretson and Ruth Thornquist, of counsel), for appellant.

Vogel and Shanks, of Chicago (Raymond F. Vogel, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

Plaintiff, Anna Collinet, brought suit for divorce against defendant, Harold Collinet, on grounds of extreme and repeated cruelty. The court, sitting without a jury, dismissed the suit for want of equity after plaintiff testified and before she completed her case. Plaintiff has appealed.

The parties were married in September, 1940, and cohabited until July, 1958, at which time they ceased to live together as husband and wife, although they have continued to reside in the same house. They have two teenage sons, the younger of whom is a spastic.

Plaintiff, in her verified complaint, alleges that without provocation defendant:

(a) On or about January 17, 1959, at the home of the parties, in anger and rage, grabbed plaintiff, violently twisted her arm, bruising and injuring her; caused her pain and knocked her to the floor.

(b) On or about October 4, 1958, in anger and rage, twisted plaintiff's arms and fingers, bruising her and causing her pain.

(c) In and about the month of July, 1958, in anger and rage, struck plaintiff across the face with violence, bruising her and causing her pain;

And that on each occasion the action was accompanied by threats of further injury, so that as a result plaintiff reasonably feared further bodily harm and ceased to live with defendant as husband and wife.

At the trial, plaintiff testified to the following instances of mistreatment by her husband. In July, 1958 plaintiff was going to take the younger son to his teacher's house for dinner, but she could not start the car due to the fact that defendant had removed one of the parts. He stood on the porch mocking her, and when she asked him if there was anything wrong with the car, without any provocation he angrily slapped her across the face, hurting her. When she attempted to take a cab instead, he twisted her fingers to take the cab money out of her hand and then he replaced one of the parts of the car that he had removed. In January, 1959, plaintiff and defendant had an argument over where the younger son would be permitted to keep his large target board. When she attempted to carry the toy away, defendant, angry

and swearing, wrested it away from her, twisting her arm backwards and hurting her. "He had his other arm around my neck, choking me." Another time, the date of which does not appear, the parties were out with friends, and defendant "cracked" plaintiff across the face "as hard as he could" when she refused to let him light her cigarette. On January 17, 1959, after plaintiff had prepared dinner, defendant called it "slop," told the younger son he did not have to eat it, and proceeded to take him out to dinner. Plaintiff sought to prevent this. "And all of a sudden . . . he grabbed me and threw me back as hard as he could, and I fell through the door . . . missed hitting my head on the table leg. He came after me, but my oldest boy came between us and kept him from getting at me. Then Harold, Jr. called the police." Defendant was angry and swearing at the time, and hurt her. She said on the occasions when he hit her she was afraid of him. Plaintiff also testified that although the parties still live in the same house, she has not lived with him as his wife since July, 1958. When plaintiff had finished testifying, the court on its own motion said it considered the acts of cruelty too slight to support a decree for divorce and announced it intended to dismiss the cause. Plaintiff offered to produce additional corroborating testimony, but the court refused, dismissing the cause, stating that it would make no difference if there were no other acts of cruelty.

■■ The question is whether the Chancellor's ruling was in error. We are cognizant of Section 64(5) of the Civil Practice Act as amended in 1955 and effective January 1, 1956, which requires that in a proceeding before a trial court, without a jury, upon a motion

75

of the defendant for a finding or judgment or decree *at the close of the plaintiff's case,* "the court shall weigh the evidence." As at law, it is the rule in equity that a motion to dismiss at the close of the plaintiff's case must be denied if there is any substantial evidence tending to prove plaintiff's case. City of West Frankfort v. Fullop, 6 Ill2d 609, 129 NE2d 682.

█ Defendant here argues that plaintiff has shown merely slight acts of violence, and that such acts do not meet the statutory requirements of extreme and repeated cruelty. Ill. Rev. Stat. Ch. 40, § 1 (1959). Our Supreme Court has characterized acts of violence as "slight" and therefore insufficient grounds for divorce in cases such as Amberson v. Amberson, 349 Ill. 249, cited by defendant, in which a husband had charged cruelty and the court had found that there was no reason to suppose that he could not protect himself by a proper exercise of his marital powers. Such language in that and other cases was qualified in Levy v. Levy, 388 Ill. 179, 57 N.E.2d 366, in which the court expressly rejects any distinction between the sort of acts required to be shown by a husband rather than a wife seeking divorce on grounds of cruelty. The court goes on to point out that obviously "slight acts" are not extreme cruelty to a normal person, husband or wife; although the physical condition of the parties may be taken into account, courts will not calibrate marital violence in degrees.

Reference to "slight acts of violence" is also found in several Appellate Court cases, such as Balfour v. Balfour, 20 Ill. App. 2d 590, 156 N.E. 2d 629, which plaintiff claims the trial court relied upon in dismissing the cause, and Tesar v. Tesar, 13 Ill. App. 2d 478, 142 N.E.2d 504, cited by defendant, and Coolidge

v. Coolidge, 4 Ill. App. 2d 205, 124 N.E.2d 1, both of which were decided by this court. In all three of these cases, the weight of the evidence was at issue, rather than the requirements of establishing a prima facie case, which is the question before us. In all three cases, a lack of corroborating testimony was an important consideration; this is not relevant here since plaintiff was not permitted to complete her case. Our court distinguished Tesar and Coolidge on these grounds in Pantle v. Pantle, 19 Ill. App. 2d 353, 153 N.E.2d 740, which stressed the importance of considering each case on its facts, and upheld a divorce for extreme and repeated cruelty based on two instances of a husband striking his wife. In Balfour and Coolidge, the reference to "slight acts of violence" is coupled with the requirement that under the statute, conduct must be grave and endanger life and limb, or at least entail great bodily harm to constitute extreme cruelty.

No reference to slight acts of violence, great bodily harm, or danger to life and limb are found in our Supreme Court's most recent decisions interpreting "extreme and repeated cruelty." They state simply that the guilty party must on at least two separate occasions have committed acts of physical violence against his spouse resulting in pain and bodily harm, and that each case must be considered on its own facts, Tuyls v. Tuyls, 21 Ill. 2d 192, 171 N.E.2d 779, including profanity and epithets accompanying attacks, showing feeling and intent, Curran v. Curran, 19 Ill. 2d 164, 166 N.E.2d 13. We hold that plaintiff's evidence, viewed most favorably to her, sets forth a prima facie case meeting these standards. We have no

77

way of knowing what corroborative evidence may show and are of the opinion that the Chancellor erred in foreclosing further proof.

■■■■ Defendant also argues that this suit is barred because the parties still reside in the same house. His authorities deal with suits for separate maintenance and divorce based on desertion, and are not applicable here. It is not necessary that the parties reside apart to secure a divorce on grounds of cruelty. Rasgaitis v. Rasgaitis, 347 Ill. App. 477, 107 N.E.2d 273. Inasmuch as defendant's argument might be taken to imply condonation, this is a matter of affirmative defense and a question of intent to be shown by words and acts evidencing full, free, and voluntary forgiveness, and even continued cohabitation will not necessarily constitute condonation. McGaughy v. McGaughy, 410 Ill. 596, 102 N.E.2d 806; Rasgaitis v. Rasgaitis, supra. Plaintiff has alleged and testified that they have not lived together as husband and wife since July, 1958, and we must examine this together with all her other evidence in the light most favorable to her. We therefore hold that plaintiff's actions in continuing to live at home and care for the family will not bar this suit.

For the reasons stated above, the order of the lower court dismissing plaintiff's suit is reversed and the cause remanded with directions to proceed with the trial.

Reversed and remanded with directions.

KILEY, P. J. and MURPHY, J., concur.