BETTY JOE RICH, Plaintiff-Appellee, *v.* MERVIN LEMOYNE RICH, Defendant-Appellant.

(Nos. 73-161, 73-288 cons.;

Fifth District—January 13, 1975.

Harlan Heller, Ltd., of Mattoon, and E. H. Price, of Robinson (Harlan Heller, of counsel), for appellant.

Robert L. Douglas, of Robinson, for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is a consolidated appeal from a decree of divorce granted the plaintiff wife, Betty Joe Rich, against the husband appellant, Mervin

Lemoyne Rich, and a subsequent order entered allowing the wife temporary support pending appeal by the husband and awarding the wife attorney fees to defend against the appeal. The decree, in addition to awarding the wife a divorce on grounds of extreme and repeated mental cruelty, awarded the wife $1750 in cash, periodic alimony of $100 per month, and attorney fees of $350; the subsequently entered order awarded the wife $50 per month pending appeal, and attorney fees of $500 for her representation on appeal. The husband has perfected his appeal from both the decree and order, entered in the circuit court of Crawford County.

■■ The first contention of the appellant to be considered is that the trial court erred in awarding appellee a divorce. The factual basis for this contention is that the "parties were living together" in the same house for a period of approximately 2 weeks *after* appellee filed her complaint for divorce. The wife's complaint did not allege the parties were living separate and apart, and the record makes no reference to the conjugal relationship of the parties during this two week period. The parties were, however, living separate and apart at the time of the trial which commenced more than 8 months after the parties had ceased their coinciding residence of the marital home. As authority for his argument that it "is against the public policy in Illinois to permit parties who are living together to maintain an action for divorce," the appellant cites *Baumgartner v. Baumgartner*, 16 Ill.App.2d 286, 148 N.E.2d 327. The *Baumgartner* case involves an action for separate maintenance wherein it is axiomatic that the parties must be living separate and apart. Consequently, we do not believe its broad language that "[i]t is against public policy for parties to live together during the pendency of such an action" (16 Ill.App.2d 286, 292, 148 N.E.2d 327, 329), was intended to include all actions for divorce regardless of the grounds alleged and the circumstances present. Obviously, if the complaint for divorce is grounded upon desertion, the parties must live separate and apart. *Floberg v. Floberg*, 358 Ill. 626, 193 N.E. 456.

■■ However, the instant complaint did not allege desertion, but rather "extreme and repeated mental cruelty" and "adultery." And, since condonation is an affirmative defense (*Lipe v. Lipe*, 327 Ill. 39, 158 N.E. 411; *Simonson v. Simonson*, 128 Ill.App.2d 39, 262 N.E.2d 326), which the appellant has failed to raise in his answer to the complaint, in his petition for rehearing or on this appeal, we deem the defense of condonation waived. Although certain inferences arise from the complainant's temporary residence in the same house with her spouse after filing for divorce, neither the argument advanced by the defendant nor the author-

ity cited therein reveals a public policy which would require a court to vitiate appellee's complaint for divorce, based upon "extreme and repeated mental cruelty," in the absence of either a fatal defect in such complaint or a valid defense, *e.g.*, condonation. On the other hand, a number of cases have allowed actions for divorce based upon "extreme and repeated cruelty" notwithstanding the continued residence of the complainant in the marital home. For example, the court in *Roback v. Roback*, 59 Ill.App.2d 222, 207 N.E.2d 130, when confronted with a plaintiff who filed a complaint for separate maintenance, or, in the alternative, for divorce based upon "extreme and repeated cruelty" while the parties were allegedly living together, stated:

> "Had separate maintenance been the sole relief sought, the defendant's argument might have merit, but it is no answer to the complaint for divorce based upon cruelty. [Citations.]" (59 Ill. App.2d 222, 226, 207 N.E.2d 130, 132.)

The foregoing was quoted and followed in *Howison v. Howison*, 128 Ill.App.2d 377, 262 N.E.2d 1. Similarly, in *Collinet v. Collinet*, 31 Ill.App. 2d 72, 175 N.E.2d 659, the court rejected the defendant's contention that the plaintiff's suit for divorce, which was based upon "extreme and repeated cruelty," was barred by "plaintiff's actions of continuing to live at home and care for the family * * *." (31 Ill.App.2d 72, 78, 175 N.E. 2d 659, 662.) See also *Rasgaitis v. Rasgaitis*, 347 Ill.App. 477, 107 N.E. 2d 273.) On the basis of these authorities and in view of the appellant's failure to show, and our lack of discovery of, any "public policy" to the contrary, we find that the trial court, which was presented with a plethora of evidence that the marriage of the parties had deteriorated to where it made the appellee's life miserable and unendurable, was justified in granting appellee a divorce.

■■ The appellant also contends that the court erred in awarding the plaintiff $1750 "alimony in gross" and $100 per month periodic alimony, and contends that a court cannot grant both a lump sum payment and periodic alimony under section 18 of the Divorce Act (Ill. Rev. Stat., ch. 40, par. 19) which has been interpreted to mean that a court cannot grant both periodic alimony and a lump sum payment. We agree that alimony in gross and periodic alimony cannot be granted. (*Rodely v. Rodely*, 28 Ill.2d 347, 192 N.E.2d 347; *Overton v. Overton*, 6 Ill.App.3d 1086, 287 N.E.2d 47.) The decree of the court does not state that the $1750 sum to be alimony in gross, but states only that plaintiff was awarded $1750 in cash. The complaint alleged that the parties owned, stored grain, farm machinery, livestock, growing crops, four motor vehicles, a house trailer, a $600 income tax refund, a $3800 equity in

their home which had been sold, and a joint bank account in excess of $2600.

The evidence shows that prior to the filing of the complaint in 1970 the parties had sold their home and received $3500 over and above the encumbrances and expenses which was placed in the joint account, which at the time of the filing of the complaint contained in excess of $2600 and in which the husband had deposited $600 received as a refund on the parties joint income tax return. The wife testified that she did not draw on the account which had been closed at the date of trial, at which time the husband had only $13 in the bank. The evidence is clear that although the husband had a large indebtedness, he also had, or had recently unexplainedly consumed, considerably more value in assets, in addition to the joint bank account. He had an inheritance of a ⅔ interest in 112 acres of land and at the time of trial owned three old motor vehicles. His farm equipment included two operating tractors and a combine. According to the depreciation schedule filed with the parties' 1971 Federal income tax return new equipment purchased in 1971 totaled in excess of $3000 and in 1970 in excess of $6400. The evidence also shows that the husband had livestock, stored grain and had received the proceeds of 40 acres of wheat at the time of separation.

While section 18 of the Divorce Act does not permit a lump sum payment in addition to periodic alimony, section 17 of the Act (Ill. Rev. Stat., ch. 40, par. 18) permits the equitable division of property accumulated by the parties without barring periodic alimony.

■■■ Appellant correctly asserts that relief under section 17 of the Act requires the pleading of special equities in the property sought to be partitioned or divided between the parties. We consider the allegations of ownership of the complaint meet such requirement and particularly note the $1750 awarded the wife in lump sum amounts to half of the $3500 net received from the sale of the home, which had been placed in the joint account and expended by the husband. In the cases which appellant cites, *Fox v. Fox*, 129 Ill.App.2d 209, 262 N.E.2d 607, and *Overton v. Overton*, 6 Ill.App.3d 1086, 287 N.E.2d 47, the wife had received a disproportionate share of the family assets. In *Overton* the wife received one-half of the husband's assets "including even the tools of his trade." Where property is held by one of the parties to a divorce proceeding which has been accumulated by the joint efforts of the two or by the funds of both, then such property should be divided as to such equity as exists between them. (*Ylonen v. Ylonen*, 2 Ill.2d 111, 117 N.E.2d 98, followed by this court in *Klebba v. Klebba*, 108 Ill.App.2d 32, 246 N.E.2d 681.) We do not determine from this record that the $1750

cash awarded was an allowance in lieu of alimony, or "alimony in gross" as defendant urges, but rather determine that it was an equitable division of property in which the plaintiff wife had alleged and proved a special equity; that the awarding of periodic alimony was not barred by the award of $1750 to the wife.

The parties had been married 30 years, and after the children matured, the wife for 7 years before separation had herself been employed at a salaried job and had no assets other than a small amount of personal property, and no funds to pay her attorney. In addition to his farming operation the husband had earned $6000 a year at a salaried job. Taking into consideration the net assets, earning ability of the parties, their condition of health and their needs, we consider the award of alimony of $100 per month was not an abuse of discretion, nor was the allowance of $350 attorney fees. *Ylonen v. Ylonen,* 2 Ill.2d 111, 117 N.E.2d 98.

We next shall consider the defendant's appeal from the trial court's order requiring the payment of attorneys' fees for the appeal and temporary alimony pending the appeal. The evidence given at the hearing on plaintiff's petition for temporary alimony differed from that given at the trial on the merits. The plaintiff testified that she was still working at the same place of employment and earning a net salary of $65 per week, that she had no assets other than personal property and had no bank accounts. She now was under a doctor's care for a possible ulcer and heart murmur. She stated she had no funds to pay her attorney.

The defendant testified, among other things, that he had not worked regularly since the first trial, that he had disposed of most of his assets, including his interest in the farm, and was $8000 to $10,000 in debt. He stated that he had had a hernia operation and back injury since the divorce decree was granted. He stated, however, that he expected to start work the day after the hearing. He testified that he had paid his attorney $1500.

The defendant cites the case of *Rabin v. Rabin,* 57 Ill.App.2d 193, 206 N.E.2d 850. The *Rabin* case holds that the court abused its discretion in awarding temporary alimony. The court stated at page 198:

> "The evidence concerning the defendant's needs and income is meager. The record shows only the defendant's gross income and does not indicate his needs and requirements. Moreover, though there is some evidence of the defendant's assets, there is no evidence of their value. Without more, this record does not justify the court's exercise of its discretion in awarding temporary alimony."

In the instant case, the trial court had before it the complete

evidence of not only the hearing on the order of temporary allowances, but also the hearing on the merits. We conclude that there is adequate competent evidence to support the trial court's award of temporary alimony and attorney fees for representation on appeal.

The judgment of the trial court is affirmed.

CARTER and G. MORAN, JJ., concur.