Anna R. Simonson, Plaintiff-Appellee, v. Karl O. Simonson, Defendant-Appellant.

Gen. No. 53,863.

First District, Fourth Division.

August 5, 1970.

 

Jerome Berkson, of Chicago, for appellant.

Shaheen, Lundberg & Callahan, of Chicago (John M. Burke and James J. O'Meara, Jr., of counsel), for appellee.

MR. PRESIDING JUSTICE STAMOS delivered the opinion of the court.

Defendant appeals from a decree that awarded plaintiff a divorce based upon mental cruelty, denied defendant a divorce based upon desertion and awarded custody of their six-year-old daughter to plaintiff. The decree also directed defendant to pay the sum of $40 per week to plaintiff for child support and provided that the court retain jurisdiction to hear evidence regarding alimony.

Defendant argues the following contentions:

 (1) There is a total lack of evidence that defendant's conduct caused plaintiff's life or health to be endangered;

 (2) Plaintiff condoned all of the acts complained of;

 (3) Plaintiff's departure and her living separate and apart from defendant were unjustified and entitled defendant to a decree of divorce on the grounds of desertion;

 (4) The court abused its discretion in awarding custody of their child to plaintiff; and

 (5) Plaintiff failed to allege and prove lack of provocation.

Plaintiff's complaint alleged fifteen specific allegations of defendant's conduct toward plaintiff that allegedly caused her severe and extreme mental anguish. It was further alleged that as a result plaintiff suffered a severe breakdown that required her hospitalization and

41

placed her in great fear for her mental and physical well-being.

Defendant answered and denied each specific allegation of misconduct toward plaintiff; that if the allegations were true, they were all condoned by plaintiff and are of themselves glaring evidence of the emotional instability and mental incapacity of plaintiff and not sufficient to establish a cause of action for mental cruelty.

The allegations and proof of defendant's misconduct, with the exception of a few instances, related to a period of time of approximately a year before the parties separated. The parties were married on May 11, 1961, after a 4-month courtship, and separated on August 30, 1967.

Plaintiff testified and also called upon next door neighbors, a family friend and two treating psychiatrists to testify in support of her allegations.

Defendant testified and denied each accusation of misconduct toward defendant and related general and specific instances of his devotion, affection and concern for plaintiff and his efforts to accommodate her personality. A salesman who frequented the parties' home and delicatessen testified that defendant always treated plaintiff with respect and decency and never cursed or abused her.

Plaintiff's evidence revealed that defendant criticized plaintiff in public and private regarding her housekeeping abilities, repeatedly boasted about his premarital relations, unfavorably compared plaintiff with these other women, struck her with a rolled up newspaper on the face and head, causing her great pain, and twisted her leg on another occasion, causing her great pain and anguish. The evidence further revealed that defendant called her "nuts," threatening to send her to the "nut house," advised others that plaintiff was "nuts," constantly cursed and swore at plaintiff, repeatedly telling her to return to Norway, constantly remained out late at night, possessed and publicly displayed pornographic pictures and magazines in her presence, refused to introduce plaintiff

42

as his wife and constantly caused her humiliation and embarrassment before their friends, relatives, customers and employees at defendant's delicatessen store.

Plaintiff testified that shortly after her marriage she realized her husband was a personality with three sides and that she had made a bad marriage, but endeavored to make it work, although she was very unhappy because he mistreated her.

In 1964, plaintiff developed nervousness and on medical advice took tranquilizers and sleeping pills for a few days. She had no further difficulty until February, 1967, when plaintiff became very nervous and experienced vomiting spells and diarrhea. She lost her appetite, became nauseous, suffered from insomnia and began to lose weight. She prevailed upon her mother-in-law to drive her to the Edgewater Hospital, and testified that she did not have anyone else to assist her, and could not rely upon defendant. After a two-week period of hospitalization, it was determined that plaintiff was in need of psychiatric care to prevent her "anxiety reactions" and was referred to the Northwestern University Clinic for examination and treatment. Plaintiff made some visits to the clinic during the summer of 1967 but felt she was not being helped. Plaintiff testified that during this period of her illness, she pleaded with defendant on her knees and implored him to at least treat her as his friend. She told defendant that she was desperate and needed his help, but defendant laughed and threatened her with incarceration in an institution for the mentally ill. Plaintiff testified that defendant's threat was the "biggest scare" in her life.

In September, 1967, plaintiff's condition had not improved and she prevailed upon her sister-in-law to drive her to Billings Hospital, where plaintiff was hospitalized and treated in the psychiatric clinic for six weeks. Her symptoms were similar to those she exhibited in February, 1967, and her condition was diagnosed as "depressive

43

reaction," for which she was afforded treatment. It was the opinion of the psychiatrists that her marital difficulties were a major contributor to the need for hospitalization. Two other emotional events in plaintiff's life they deemed significant were plaintiff's miscarriage in August, 1966, and the fact that her daughter in February, 1967, attained the same age that plaintiff had when plaintiff's first sibling was born. Plaintiff was discharged from the hospital on October 26, 1967.

After plaintiff's separation from defendant in August, 1967, and her subsequent hospital care, she was greatly improved and exhibited none of the symptoms for which she was given treatment. Her mood was considerably improved and the psychiatric impairment was minimal. Plaintiff was also examined on July 25, 1968, and no evidence of any psychiatric disorder was discovered.

During her hospitalization, the psychiatrists discerned that plaintiff was a person who tended to keep resentment to herself, not being open and expressive about it, with a tendency to handle stressful relationships, inner distresses and nervousness by pleasantness and carefree amiability.

There is no dispute that plaintiff suffered a mental illness that required her hospitalization on more than one occasion. Plaintiff's condition was diagnosed as "depressive reaction." Defendant contends that there is a total lack of evidence that his conduct caused plaintiff's mental health to be endangered, but that plaintiff was a victim of her own frail personality and emotional instability. Defendant further contends that none of his conduct, that plaintiff complains about, if true, would be sufficient to meet the legal requirement for mental cruelty.

In Hayes v. Hayes, 117 Ill App2d 211, 254 NE2d 288, at page 215, the court expressed the following language we find appropriate to the case at bar:

"It is within the province of the trial court to make the determination whether there has been sufficient evidence with which to establish either party's contentions. In the instant case the trial court heard the evidence, viewed the witnesses and was in a better position to conclude the issues. This court will not set aside the findings and judgment of the trial court unless the decision reached by such trial court is against the manifest weight of the evidence. Hoffman v. Hoffman, 40 Ill2d 344, 239 NE2d 792 (1968); Curran v. Curran, 19 Ill2d 164, 166 NE2d 13 (1960), and the trial court's findings are presumed to be correct. Gillespie v. Gillespie, 70 Ill App2d 38, 216 NE2d 462.

" 'Whether certain acts will constitute physical or mental cruelty still depends upon the total factual background surrounding the conduct under question. This includes the particular emotional and personal makeup of the parties and the varying circumstances under which any of the incidents occurred that may have given rise to the acts.' Stanard v. Stanard, 108 Ill App2d 240, 247 NE2d 438 (1969). In this case the emotional makeup of the plaintiff must be considered in determining the effect of the conduct of defendant in providing grounds for the mental cruelty allegation. Plaintiff's testimony, taken with the psychiatrist's reports, furnish an adequate basis for the court's findings."

■ We find that the evidence in the case at bar is sufficient to establish that defendant has been guilty of extreme and repeated mental cruelty. (Ill Rev Stats, c 40, § 1 (1967).)

■ Defendant contends that the continued cohabitation and sexual relations of the parties constituted condonation of defendant's alleged misconduct. Condonation

45

is a question of intent to be shown by words and deeds that reflect full, free and voluntary forgiveness and continued cohabitation will not necessarily amount to condonation. Collinet v. Collinet, 31 Ill App2d 72, 78, 175 NE2d 659. Plaintiff in the case at bar testified that she engaged in sexual relations, relied upon by defendant as condonation, against her wishes and that she was afraid of him.

In Rasgaitis v. Rasgaitis, 347 Ill App 477, 107 NE2d 273, at page 482, the court said: "The law will not presume that a wronged wife condones the actions of her guilty husband simply because the difficulty of finding another place to live, the welfare of her child, and other factors beyond her control, force her to remain temporarily in the same house with him." Condonation is an affirmative defense which defendant pleaded but failed to prove by a preponderance of the evidence.

In view of the foregoing, defendant's contention that plaintiff's departure and her living separate and apart were unjustified and entitled defendant to a decree of divorce on grounds of desertion, is of no merit.

The Chancellor elicited an opinion from one of plaintiff's psychiatrists that plaintiff was capable of caring for her minor child. The Chancellor also asked questions of the same witness which revealed that the witness was not surprised to learn that plaintiff filed a separate maintenance action while she was hospitalized. Defendant complains and contends that the answers were both bottomed on conversations the witness had with plaintiff, were hearsay, and should not have been admitted into evidence. We find no error in the admission of an expression of the medical opinion and as to the other point, we observe that it was on defendant's own motion that voluminous medical records of both the Edgewater Hospital and the University of Chicago Hospitals and Clinics were received into evidence. These exhibits

reflected countless recitations of conversations plaintiff had with the witness and other medical personnel regarding her illness, treatment, prognosis, symptoms and her marital disharmony and discontent. We also note that defendant's cross-examination prior to the Chancellor's questions delved into conversations this psychiatrist had with plaintiff regarding her marital difficulties.

■ There is no evidence in the record that would justify this court in finding that the Chancellor abused his discretion in awarding custody of the minor child to plaintiff. The psychiatric testimony established that plaintiff was not emotionally unstable but had, in fact, recovered from her illness and was clearly able to function and assume responsibility for the care of her minor child. The paramount consideration in determining custody is the welfare and best interest of the child. Nye v. Nye, 411 Ill 408, 105 NE2d 300. We cannot set aside this award unless it was entered against the manifest weight of the evidence. We find that under the facts and circumstances of this case, the Chancellor did not abuse his discretion and authority in awarding custody of the child to plaintiff.

Defendant contends that plaintiff's complaint lacks an essential element in failing to allege a lack of provocation and thus does not state a cause of action and that therefore, the complaint may be successfully attacked on appeal as not justifying the decree. Stanard v. Stanard, 108 Ill App2d 240, 247 NE2d 438.

In Booker v. United Savings & Loan Ass'n, 48 Ill App2d 246, 248, 198 NE2d 545, this court on motion of plaintiff allowed an amendment of the pleadings on appeal to conform to the proofs. The complaint charged general negligence, but failed to allege that plaintiff's intestate was in exercise of due care for her own safety. This court in that case observed that plaintiff's evidence showed habits of due care of the deceased and that plaintiff's counsel

argued due care and both parties tendered instructions on due care which were submitted to the jury.

In the case at bar, plaintiff's evidence more than adequately depicted that defendant's misconduct was not caused or provoked by plaintiff and defendant averred and adduced evidence and conducted his cross-examination on the theory that the acts and misconduct of purported extreme and repeated mental cruelty charged by plaintiff never occurred—a theory which, by its nature, is inconsistent with a defense of provocation.

■ Although defendant did interpose a motion to dismiss the complaint in the trial court, which was overruled, it was never specifically pointed out that the complaint lacked the requisite allegation reciting lack of cause or provocation on the part of plaintiff. We are certain, that under the circumstances and facts of this case, had this defect in the complaint been brought to the attention of the trial court an appropriate amendment would have been allowed since it could not possibly have prejudiced defendant in view of the character of his defense in the trial court. However, in this court plaintiff has not requested such relief. Therefore, we hereby order the complaint amended to conform to the proofs on our own motion pursuant to Supreme Court Rules 362(f) and 366(a)(1), Ill Rev Stats 1967, c 110A, §§ 362(f) and 366 (a)(1). The complaint shall be amended to allege, "that the conduct complained of by plaintiff was without cause or provocation on her part."

The judgment is affirmed.

Judgment affirmed.

DRUCKER and ENGLISH, JJ., concur.