PATRICIA R. DEAHL, Plaintiff-Appellee, *v.* BENJAMIN T. DEAHL,
Defendant-Appellant.

(Nos. 55345, 56124 cons.;

First District (5th Division)—June 29, 1973.

Frederick J. Bertram, of Chicago, for appellant.

Mitgang, Levine and Schwartz, of Chicago, (John B. Schwartz, of counsel,) for appellee.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

On June 2, 1970, a judgment for divorce on grounds of mental cruelty was entered against defendant, Benjamin T. Deahl, and in favor of plaintiff, Patricia R. Deahl. The decree also provided, among other things, for plaintiff's custody of three minor children, payment of child support by defendant, transfer by him to plaintiff of child support, the entire

interest in the family residence, and payment of plaintiff's attorney's fees. Defendant has appealed from that entire decree. (Case No. 55345.)

On October 13, 1970, defendant filed a section 72 petition (Ill. Rev. Stat. 1969, ch. 110, par. 72), seeking to vacate or modify the divorce decree on the ground of newly discovered evidence which indicated that plaintiff had fraudulently procured from the court the entire interest in the family residence as "alimony in gross and in lieu of alimony payments," while at the time intending to marry another man as soon as the decree had become final, thereby avoiding what would otherwise have been a cut off in alimony payments on the occurrence of her remarriage. Plaintiff moved to strike or dismiss defendant's petition, but on May 6, 1971, after a hearing, the petition was denied. Defendant's subsequent appeal (Case No. 56124) from that judgment has been consolidated with the earlier appeal.

Plaintiff and defendant were married on April 18, 1947, and at the time of the divorce had six children, three of whom were minors. In 1963, a home was purchased with a $3500 down payment provided by plaintiff's father. From then until the time of separation in 1970, defendant made monthly mortgage payments of $138.22, totalling more than $11,000, by far the larger part thereof representing payments of interest which, while accomplishing only a small increase in the parties' equity, did, indeed, succeed in preserving the parties' title and equity in the property.

*Testimony of plaintiff:*

During the last three years of their marriage, she and her husband weren't getting along very well; they were fighting about sex three or four times a week. He bathed every two or three weeks and always had a foul odor. He complained about her cooking and at times would throw the food on the floor. On Thanksgiving Day, 1967, he came downstairs for breakfast at about 2:30 in the afternoon. At that time plaintiff was preparing dinner for guests who had arrived about noon. Defendant demanded breakfast and when he was told dinner was being prepared and there was no time for breakfast, he made vulgar remarks to his wife in front of the guests. Plaintiff broke into tears and left the room. Defendant went back to bed and reappeared as everyone was finishing dinner, had his food reheated, and then told his wife, again in the presence of company, that her food wasn't fit to eat.

In October of 1966, plaintiff's father was staying in the home while recuperating from a heart attack. Fights occurred regularly over sexual matters and in the presence of her father defendant would call his wife a bitch and a slut.

In the morning of December 22, 1967, defendant refused to get up

and go to work. A fight ensued, after which defendant left the house and went downtown. When he returned that evening he asked his wife if she had made any money. When she replied that she hadn't he said, "You could have went and sold yourself and made some money that way; that's all you're good for." The next day, with all of the children present, he said he didn't think the kids were his and that plaintiff was a slut like her mother.

From early 1967 through February, 1968, plaintiff was regularly taking tranquilizers which had been prescribed by her psychiatrist. She saw the doctor at least two or three times a week during that period. From December, 1967 until March of 1968, she was feeling very depressed and was ready to commit suicide.

On February 29, 1968, plaintiff was in a deep state of depression. She left home about 1:30 P.M., went to the drug store to have a prescription filled, then to the Savings & Loan to make the house payment, to her doctor, and then to the home of a friend about 5:30 P.M. She had dinner there and then went to a tavern with her girl friend. She had never before gone to a tavern with her girl friend but on this occasion she had two highballs and arrived home about 11:15 or 11:30. Her husband came down to meet her and tried to push her out the back door and down the steps. Eventually they got back in the house, but the altercation had awakened all the children. When she reached for the phone to call the police, he pulled the phone from the wall and hit her with the receiver. She left the house and flagged down a squad car, telling the officer that she wanted to file a complaint against her husband and have him taken in. After she filled out the complaint, the officers went back to the house with her and arrested defendant. She had the locks changed about 3:00 A.M. because she was afraid her husband would try to return. She and the children felt much better after defendant had left the home. The children's school work improved, and she was taken off tranquilizers and was able to sleep at night. She never had sexual relations with anyone other than her husband during their marriage.

From early 1967 until February 28, 1968, she had sexual relations with her husband about twice a week. Although there is a conflict in the testimony, it appears that this pattern continued until a few days before the final incident which led to defendant's arrest, but was not renewed at any time thereafter.

Plaintiff was not regularly employed, but had worked for occasional periods of time in a laundromat and a pizza place. On February 13, 1968, she withdrew $1,676.83 from their joint bank account because her husband had been using the money to bet on the horses and she didn't want

the rest of it squandered. From 1963 until the last payment before trial, the mortgage payment was made by defendant from the money he earned at the post office.

*Testimony of James McCorkle:*

On April 5, 1968, he observed an incident which occurred in front of the Deahl family home about 2:00 in the afternoon. He had known the Deahls for about seven years and had come to the house on that day in the hope of effecting a reconciliation between them. He found plaintiff and defendant arguing on the front porch, overheard part of the conversation, and then saw plaintiff run into the house in tears. His testimony recited various other incidents which had occurred in the course of their friendship which evidenced defendant's repeated acts of public embarrassment of his wife.

Other witnesses, including defendant's 21-year-old daughter, related additional arguments between the parties, mostly concerning defendant's claimed need to have more sex with his wife.

*Testimony of defendant:*

At the time of the trial, he had two jobs: during the day as a lathe operator; and four to five hours a night as a post office employee. He denied saying that none of the children were his. Concerning the incident of December 20, 1967, defendant stated that he had a migraine headache and decided not to go to work. Plaintiff called him all kinds of names and then beat on him with her fists. When he tried to get up to chase her, she ran down the hall and slipped down some stairs. He never touched her, hit her, or struck her, and didn't push her at all. He took a bath at least once a week. He had sexual relations on a regular basis until February 29, 1968, when he was locked out of his house. During more than 20 years of marriage, he had turned his pay checks over to his wife and from this money she would pay the family bills.

OPINION

Defendant raises a veritable gallimaufry of points on his appeal from the judgment for divorce:

1. The decree of divorce in favor of plaintiff is not supported by the evidence.

2. Plaintiff's allegation of mental cruelty in Count II of her complaint failed to state a cause of action.

3. The court erred in denying defendant's motion to strike and exclude from the evidence all testimony concerning alleged cruelty of defendant prior to February, 1968, the same having been condoned.

4. Plaintiff was guilty of recrimination.

5. The court erred in directing that defendant transfer his interest in

the real estate described in the decree, and providing that it "be considered alimony in gross and in lieu of alimony payments."

6. The court erred in decreeing that defendant pay plaintiff's attorney's fees, and turn over half of his personal bank account and half of his federal tax refund check.

■■■ Defendant maintains that the law favors the preservation of the estate of marriage and should grant a divorce only when there is sufficient proof of the grounds as set forth in the statute. The grounds in the present case were mental cruelty, which case law states is dependent on the total circumstances of each case, the test being the effect such conduct has upon plaintiff and the marriage. Mental cruelty is established when the court determines that there is a pattern of "abusive and humiliating treatment, calculated or obviously of a nature to torture, discommode, or render miserable the life of the opposite spouse; and which actually affects the physical or mental health of such spouse." (*Howison v. Howison,* 128 Ill.App.2d 377, 382, 262 N.E.2d 1, 3.) Furthermore, where the wife has psychiatric difficulties, the emotional stability of the wife is one of the factors to consider in determining the effect of the husband's conduct on the wife and the marriage. (*Simonson v. Simonson,* 128 Ill.App.2d 39, 262 N.E.2d 326.) Even accepting defendant's statement that the law favors preservation of the marriage, applying the above standard to the facts of the present case, we find the judge ruled properly on the basic issue of divorce, and his findings were not against the manifest weight of the evidence. (*Hoffman v. Hoffman,* 40 Ill.2d 344, 239 N.E.2d 792.) Without repeating the unfortunate incidents here, there is abundant evidence which discloses repeated attempts by defendant to humiliate and embarrass his wife, with the knowledge that she was seeking psychiatric help and that his conduct was contributing to her emotional despair.

■■ Next, defendant asserts that Count II of plaintiff's complaint fails to state a cause of atcion. Since the original complaint contains only one count, we assume defendant is referring to plaintiff's amended complaint, Count II of which recites a series of alleged acts of mental cruelty and concludes in paragraphs 9 and 10 as follows:

"9. That as a result of the aforesaid acts of mental cruelty, plaintiff placed herself under care of a physician, is still under his care, and is and has been undergoing medical treatment since December, 1967.

10. That the aforesaid acts of mental cruelty have caused the plaintiff to suffer great shame, humiliation, fear, and mental anguish, and have destroyed the marriage relationship between the parties."

Although there are no specific requirements about what constitutes a sufficient allegation of mental cruelty, *Stanard v. Stanard,* 108 Ill.App.2d 240, 247 N.E.2d 438, states that a proper allegation must include, among other elements present here, an allegation of the cumulative effect the acts have upon the complaining spouse, *i.e.,* "the effect of his conduct on her life, person or health, * * *." It seems clear to this court that the allegations referred to above adequately allege the cumulative effect which defendant's behavior had on plaintiff's "life, person or health" when they state that they "have caused the plaintiff to suffer great shame, humiliation, fear and mental anguish, and have destroyed the marriage relationship between the parties."

Defendant next maintains that the court erred by denying his motion to strike and exclude all testimony concerning the alleged cruelty of defendant prior to February, 1968. His argument is based on the proposition that each such alleged act of mental cruelty had been condoned prior to that date.

 Condonation is an affirmative defense requiring a defendant to show by a preponderance of the evidence a plaintiff's intent to forgive defendant's prior acts which otherwise would constitute grounds for divorce. Proof usually is shown by deeds and words of voluntary forgiveness, but continued cohabitation alone will not necessarily constitute condonation. (*Collinet v. Collinet,* 31 Ill.App.2d 72, 175 N.E.2d 659.) We find nothing in this record which indicates that plaintiff did anything more than continue to live in the same house with her husband and occasionally have sexual relations with him, a course of conduct which, without more, is insufficient proof of condonation. (See *Rasgaitis v. Rasgaitis,* 347 Ill.App. 477, 107 N.E.2d 273; and *Simonson v. Simonson,* 128 Ill.App.2d 39, 262 N.E.2d 326.) Condonation is also a forgiveness conditioned on future good behavior, and nothing in the record discloses that plaintiff ever forgave the prior acts of defendant on the condition that the acts would not be repeated and that he would in the future treat plaintiff with conjugal kindness. (See *Quagliano v. Quagliano,* 94 Ill.App.2d 233, 236 N.E.2d 748.) In fact, there is little, if any, kindness apparent during the last few years of this bitter marriage. Even if defendant had been able to sustain his burden of proving condonation of his acts prior to February, 1968 (which we believe he did not do), the acts of cruelty on February 29, 1968, and April 5, 1968, would have been sufficient to revive the previously condoned acts and thereby provide a sufficient basis for the judgment. (*Dunivant v. Dunivant,* 5 Ill. App.2d 481, 125 N.E.2d 836.) The trial judge, therefore, did not err in denying defendant's motion to strike and exclude testimony of his acts of cruelty which occurred prior to February, 1968.

■■ Defendant also suggests that plaintiff was guilty of the rather archaic and somewhat obsolescent defense of recrimination. However, the only evidence to support this contention is defendant's own testimony, which, by a contrary ruling, the trial court indicated it chose not to believe. Since it is the trial judge who is in the best position to determine the credibility of the witnesses, we will not substitute our judgment for his in this regard.

Defendant's next two contentions, (1) that the court erred when it decreed that defendant transfer his entire interest in the family residence to plaintiff as "alimony in gross and in lieu of alimony payments" when she intended to remarry soon after the decree was entered, and (2) that the court erred in ordering defendant to pay plaintiff's attorney's fees, and turn over one half defendant's bank account, and half of his federal income tax refund check for 1968, are best disposed of by considering the appeal in the section 72 proceeding which has been consolidated with the earlier one and which raises closely related issues.

Defendant's section 72 petition sought vacatur of the divorce decree, or, in the alternative, its modification or alteration.

The petition was filed on September 10, 1970, more than three months after the entry of the decree but within the two year limitation of the statute. Plaintiff filed a motion to strike, and a hearing was held May 6, 1971, at which time defendant's petition was denied. After defendant appealed, plaintiff's motion to dismiss the appeal was denied by this court.

Defendant's section 72 petition alleged that in obtaining entry of her decree for divorce on June 2, 1970, plaintiff intentionally concealed from the court and from defendant the fact that she was about to remarry. It was further alleged that on June 24, 1970, plaintiff applied for a marriage license and that several days prior thereto she had been examined by a doctor, as required by statute for the issuance of such a license, and that the marriage did, in fact, take place on July 2, 1970, 31 days after entry of the divorce decree. Further, that none of the above-stated events became known to defendant until more than 30 days after the entry of the decree; that had such facts not been concealed from defendant by plaintiff, he could have moved to vacate or modify the decree within a 30-day period and thereby avoided the necessity of commencing the section 72 proceedings.

A similar situation arose in *Roth v. Roth*, 45 Ill.2d 19, 256 N.E.2d 838, where appellant sought to modify the decree of divorce by filing a section 72 petition. It was alleged in the petition that appellee had made "fraudulent and deceitful representations" to the court that she had no intention to remarry. It was further alleged that in reliance upon

these statements, the trial court induced appellant to increase the property settlement. Thirty-one days after the decree was entered, appellee remarried. As in the present case, appellee filed a motion to strike and dismiss the section 72 petition. However, the motion was denied, and appellee decided not to answer but to stand on her motion. The circuit court modified the earlier decree based on the alleged fraud, but was reversed by the appellate court. In reversing the appellate court and affirming the circuit court, the Supreme Court stated that when a divorce decree is procured through the alleged fraud of either party, it may be vacated or modified through proceedings under section 72. And, further, the court stated: "When the appellee elected to stand on her motion to dismiss rather than file an answer to the appellant's petition, there was an admission of all facts well pleaded in the petition." *Roth v. Roth,* 45 Ill.2d 19, 23, 256 N.E.2d 838.

■■ We find that defendant's section 72 petition satisfies the necessary requirements of the statute. It pleads facts which were not known to him until more than 30 days after the entry of the decree and which, had they been known and proven, would have entitled him to the relief sought. Defendant was not lacking in diligence, nor was he negligent in any way in filing the petition on October 13, 1970, less than four months after plaintiff's remarriage. The record indicates that at the hearing on defendant's petition, the court was "fully apprised in the premises" but it also indicates that it did not call witnesses nor hold a full evidentiary hearing which could have disclosed the fraud which was adequately alleged in the petition.

■■ Since plaintiff's motion to strike admitted the truth of all facts well pleaded in defendant's petition, as set forth above, and the allegations therein state sufficient facts which, if true, would provide a basis for modification of the divorce decree, the trial court erred when it denied the section 72 petition. Although the present case does not disclose that plaintiff affirmatively denied any intention to remarry, as in *Roth,** the nondisclosure of her immediate intention to remarry constituted an affirmative withholding of a material fact which was vital for the judge to know in determining whether to decree periodic alimony payments terminable upon remarriage, or an award of alimony in gross

---

* See *Forest Preserve District of Cook County v. Christopher,* 321 Ill.App. 91, 105-106, 52 N.E.2d 313, 319, where the court said: "While it is true, as appellants argue, that mere silence does not amount to fraud, nevertheless, as stated by the law writers, there are times and occasions when it becomes the duty of a person to speak, in order that the party he is dealing with may be placed on an equal footing with him, and when a failure to state a fact is equivalent to a fraudulent concealment, and amounts to fraud equally with affirmative falsehood."

which would not be so affected. Thus, while we do find the *Roth* case distinguishable on the basis of a stated misrepresentation, we apprehend no difference in principle. Actually, the corroborative evidence of intent to remarry as soon as the degree was entered, is substantially stronger in this case than in *Roth.* Therefore, we reverse the trial courts order denying defendant's petition on plaintiff's motion to strike, and, on the state of the pleadings, the cause is remanded to the trial court with direction to deny plaintiff's motion to strike and for further proceedings not inconsistent with this opinion. For reasons stated earlier, we affirm the trial court's granting of the divorce itself on grounds of mental cruelty.

Affirmed in part and reversed and remanded with directions.

DRUCKER, P. J., and LORENZ, J., concur.

