Corrine Schouten, Plaintiff-Appellee, v. Warren
Schouten, Defendant-Appellant.

Gen. No. 69–41.

Fifth District.

October 2, 1970.

William W. Schooley, of Granite City (Dennis J. Hogan, of counsel), for appellant.

No brief for appellee.

MILLS, J.

The 27 years of marriage in this case would hardly be characterized by Milton as "throned on highest bliss." The Schoutens, the record tells us, were apparently strong-willed and rigid parties to the marital contract, for the union was marked by stormy periods of mutual harassment, vindictive and reciprocal verbal characterizations, a separate maintenance proceeding, and reports to the police. Abusive and derisive exchanges added to their domestic discussions a certain unpleasant spice. It would be difficult, indeed, after examining all of the mundane factual trivia in the record, to determine who

was the winner in this marital bout. Each, at least, came in a good second.

But the connubial typhoon reached its zenith at last, and Mr. Schouten came home from work one evening to find the house stripped. Mrs. S had wiped him out. Furniture for three bedrooms, a living room, and kitchen, as well as sundry tools and other items of personal property, were gone. All she left was one bed, a desk and some "odds and ends." Two days later, she had the remaining bed hauled out, as well. Out of four twin beds and one double, Mr. S emerged from the fray with none. The trial transcript reads as follows:

> THE COURT: "And when you moved the equipment out you say you had four twin beds and one double bed?"
>
> MRS. SCHOUTEN: "Yes."
>
> THE COURT: "Did you and your son need all these beds? Was there any reason why you wouldn't leave one bed for him?"
>
> MRS. SCHOUTEN: "No, I guess that was a mistake to do that."

The harried judge patiently listened to all the evidence, the claims, the counterclaims and ultimately entered findings of fact and a decree granting the divorce to the husband on his counterclaim based on desertion by the wife. The custody of a 17-year-old minor son was given to the mother. And the court, in its decree, opined:

> "Further, although it was wrong for her to do so, Plaintiff, Corrine Schouten, took all of the household goods with her when she deserted and the court finds that said property should remain and be the property of Plaintiff, Corrine Schouten, such items being necessary for the proper care of the child, Thomas Warren Schouten."

420

It is from this singular action of the court that this appeal is taken. The towering question of jurisprudence here posed is whether a divorce court may divest a husband of his property interest in household goods because the items are found to be necessary for the "proper care of the child?"

■ The Illinois rule clearly is that jurisdiction of divorce matters is not grounded upon general powers of equity, but rather finds its unique and total existence in the statute. Cross v. Cross, 2 Ill2d 104, 116 NE2d 892, 895. Therefore, absent specific legislated authority, a chancery court is devoid of jurisdiction to adjudicate, allot, dispense or otherwise dabble with the separate property of the parties. The only pronouncement of the Divorce Act by which such property disposition can be made is section 17, and it provides: "Whenever a divorce is granted, if it shall appear to the court that either party holds the title to property equitably belonging to the other, the court may compel conveyance thereof to be made to the party entitled to the same, upon such terms as it shall deem equitable."

■ ■ This section of the Divorce Act has remained intact since 1874. And an avalanche of case law has developed over the past century to enunciate the controlling cardinal rule: Courts in divorce actions may adjudicate property rights between parties, regardless of fault or the grounds for divorce, upon the basis of special circumstances, equitable ownership and other equities. Particularly is this general rule to be followed where the property involved is acquired as the result of joint efforts by the parties to the marital contract. Furthermore, it is established that the circumstances and equities relied upon must be both alleged in the pleadings and supported by the evidence. Stevens v. Stevens, 14 Ill2d 99, 150 NE 2d 799, 804; Ylonen v. Ylonen, 2 Ill2d 111, 117 NE2d 98, 102; Persico v. Persico, 409 Ill 608, 100 NE2d 904,

905; Rardin v. Rardin, 339 Ill App 68, 89 NE2d 67, 69; Chmiel v. Chmiel, 399 Ill 91, 77 NE2d 162, 164.

■ Although the myriad of cases interpreting section 17 of the Divorce Act deal primarily with real estate, it is clear that the principles here set forth are equally applicable to personal property and household goods—we can perceive no distinction whatever between realty and personalty in this context. Rardin v. Rardin, supra; Bissett v. Bissett, 375 Ill 551, 31 NE2d 955, 958.

In the case on review, Mrs. S did not allege, nor did she adduce by proof, any equitable ownership, special circumstances or existing equities relative to the household goods. In fact, the court specifically found that she erred and was wrong in taking all of the priceless plunder "with her when she deserted." Consequently, under the authority of section 17 of the Divorce Act, the court had no power to invest her with the property rights of her consort.

■■ But the court specifically found that the items of personal property were "necessary for the proper care of the child." Is this sufficient to divest the husband of his interests therein? We think not. The same principles apply here, and it would seem to us that there must be a factual basis and equitable merit demonstrated of record to warrant the court to divest a spouse of particular personal property for the care of a child. And then, only in unusual and uncommon circumstances, where the welfare and well-being of the minor uniquely requires specific items of personalty. Such circumstances are not reflected in the case on review. There is neither such a finding, nor evidence to support one. In addition, the decree granted title to the property to Mrs. Schouten, and not for the child's sole use during his minority. And it would seem manifest that a minor son would not require the total of four twin beds and a double, nor the medley of odds and ends.

■ Accordingly, the circuit court erred in the disposition of the household goods. That portion of the decree is reversed and the cause is remanded with directions to the trial court to readjudicate the husband's interest in the household goods consistent with the views expressed herein. In all other respects, the decree is affirmed.

Affirmed in part, reversed in part, and remanded, with directions.

EBERSPACHER, P. J. and GOLDENHERSH, J., concur.