RUTH VIVIAN HALLORAN, Plaintiff and Counterdefendant-Appellant, *v.* WILLIAM PAUL HALLORAN, Defendant and Counterplaintiff-Appellee.

Third District   No. 75-152

Opinion filed June 18, 1976.

William E. Eaken, of Kankakee, for appellant.

Taube and Judd, of Kankakee, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Plaintiff Ruth Halloran appeals from a decree of the Circuit Court of Kankakee County awarding a divorce to defendant William Paul Halloran and ordering a property division.

From the record it appears that the parties to this action had been married for 34 years. Plaintiff Ruth Halloran filed a complaint for divorce against her husband on ground of mental cruelty. Defendant William Paul Halloran counterclaimed for a divorce on both mental and physical cruelty. On appeal in this court, plaintiff challenges the award of the divorce to her husband and contends that she, instead, proved sufficient facts to be entitled to a divorce. She also contends that the trial court

exceeded its power in ordering a sale of the marital residence as part of the property settlement.

It appears from the record that the parties to this action are now in their mid-fifties and had raised two children who are now grown and who have married. It is alleged by plaintiff that problems arose between the parties around August 17, 1973, when defendant began leaving the home of the parties during the evening and not returning until after midnight, sometimes as late as 4 a.m. The late night outings apparently became more frequent as time passed, plaintiff testified, until defendant spent an average of 3 or 4 nights a week out of the house. Plaintiff also testified that on most of these occasions, her husband would give her no explanation of his departure, nor any information as to his whereabouts before or after his absences. On many nights, plaintiff stated, defendant returned in what she termed a state of intoxication.

Plaintiff testified, also, that when they went to social functions jointly, defendant would often leave her early in the evening and spent his time with others who were attending the social function. Defendant, at times, would refuse to dance with plaintiff and then immediately dance with someone else, according to plaintiff.

It was asserted by plaintiff, also, that defendant and plaintiff were friends of a certain couple, the Borns. Plaintiff testified that her husband always insisted on including the Borns in their social plans, while plaintiff did not think that it was a good idea. Mrs. Born had been a maid for the Hallorans for some time, but had been discharged when plaintiff found out that her husband would at times spend part of the afternoon at home having cocktails with Mrs. Born. Plaintiff also testified that defendant often said he no longer loved her or cared for her and that he would avoid any physical contact in their marital bed. She also testified that she did not believe she had precipitated his conduct in any way.

Defendant, in support of his counterclaim, testified that plaintiff often belittled him by comparing him unfavorably to other men in the community. He stated that she swore at him often even when she was not intoxicated and that she often threw things at him, once even hurtling a knife in his direction. Defendant testified that plaintiff on occasion struck him with her fists and also kicked him at times. He also stated that plaintiff told him she hated him and, on at least one occasion, threatened to kill him. While defendant admitted he might have provoked some argument, he claimed he did nothing to give her reason to strike him.

Plaintiff testified that as a result of defendant's conduct, she became upset and nervous, and felt rejected. She had consulted both a physician and a psychiatrist about her condition. Defendant also testified that his spouse's conduct caused him to be upset and nervous and that he was embarrassed by her cursing in public.

Plaintiff argues on appeal that the trial court's decree for defendant was against the manifest weight of the evidence, and that he did not prove any conduct by her was unprovoked by him and that she was entitled to a divorce according to the evidence presented. From our examination of the record, it appears that the evidence generally was sufficient to show mental cruelty on the part of both parties and to justify a decree in favor of either.

■■ In view of the record, had we been sitting as trial judges, we might have found in favor of plaintiff on the issue of who was entitled to a divorce but we cannot say, from the record, that the determination by the trial court that the divorce should be awarded to the defendant was contrary to the manifest weight of the evidence. Since the trial court heard and saw the parties he is in a position of some advantage in a case of the nature we are now considering. We, therefore, conclude that the judgment of the trial court awarding the divorce should be affirmed.

As a final issue, plaintiff asserts that the court's decision to "sell" the marital residence and to divide the proceeds equally between the parties, after payment of debts, was improper. The home was owned by the parties jointly and each claimed special equities in the property in accordance with the provisions of section 17 of the Divorce Act (Ill. Rev. Stat. 1973, ch. 40, par. 18). Plaintiff also asserts that the court had no power to order a sale of the land and a division of the proceeds thereof, absent compliance with the procedures outlined in the Partition Act (Ill. Rev. Stat. 1973, ch. 106, par. 44 *et seq.*). Defendant, however, contends that the issue of an equitable property settlement was placed before the court by the request of both parties that the court adjudicate property rights and the claim of special equities made by each. It is contended that the court thus had the power to act in disposition of the rights of the parties. Defendant contends that his request in the alternative that the court order the property sold and the proceeds divided according to the equities of the parties is sufficient sanction for the court to act, or even to proceed with partition of the property.

■■ We have found no case fully reported which considered the issue of the trial court's authority to order a sale of property as part of a divorce decree, although there has been one abstract decision (*Nugent v. Nugent* (1973), 9 Ill. App. 3d 702, 292 N.E.2d 917). Most of the cases reported involved dispositions by agreement of the parties. We agree with plaintiff that the jurisdiction of the court in a divorce case, though including general equitable powers, is founded on statutes (*Cross v. Cross* (1954), 2 Ill. 2d 104, 108, 116 N.E.2d 892; *Schouten v. Schouten* (5th Dist. 1970), 129 Ill. App. 2d 418, 421, 263 N.E.2d 715). As indicated in *Schouten*, in absence of some governing statutory provision, a court may not interfere with property rights and interests of the parties. The court may, where

appropriate, and where requested, by one or both of the parties, order transfers of property or property interests from one part to another, according to the equities where special circumstances appear. (Ill. Rev. Stat. 1973, ch. 40, par. 18.) The court may also order transfer of property as alimony in gross. Ill. Rev. Stat. 1973, ch. 40, par. 19.

The only remaining statutory authorization which we have discovered is found in section 17a of the Divorce Act (Ill. Rev. Stat., 1973, ch. 40, par. 17a) where it stated:

> "A circuit court having jurisdiction in an action for divorce may, upon complaint of one of the parties, hear and decide an action for partitition subject to the provisions of [the Partition Act (Ill. Rev. Stat., ch. 106, par. 44 *et seq.*)] except as otherwise provided in this Act."

Defendant argues that his alternative prayer for sale and division of the proceeds was in the nature of a prayer for partitition and vested the court with jurisdiction to order a sale. In the decree of the trial court, in section 6 of the ordering part of such decree, the court provided "the marital residence of the parties shall be sold and from the proceeds of sale" that certain obligations including the mortgage on property be first paid. The court then went on to state that after the payment of the obligations, the balance of the proceeds from the sale of the marital residence shall be divided equally between the parties. In a succeeding paragraph of that same section, the court provides "it is further ordered that, in the event the parties cannot agree upon those matters necessary to the sale of the marital residence, either party may apply to the court for modification of this Decree of Divorce in  order to have the marital residence sold at a Sheriff's sale."

■■ It is apparent, therefore, that the court emphasized the operative effect of the decree as an "in personam" decree, and further reserved jurisdiction to provide, in the event the parties, for good cause shown, could not complete the sale, that the parties should apply to the court for an in rem decree. This provision may be implemented by amended pleadings to comport to the provisions of section 17a of the Divorce Act (Ill. Rev. Stat. 1973, ch. 40, par. 17a), so that the property could be sold at an ordered public sale. We do not interpret the decree of the trial court as to ordering a judicial sale. As we have noted, the decree contemplates some supplementary procedure, presumably in accordance with section 17a of the Divorce Act.

For the reasons stated, the order of the trial court is affirmed and the cause is remanded for further proceedings. If upon such further proceedings in the trial court it appears that plaintiff, for good cause (such as being required to surrender a legal or equitable right), does not desire to cooperate in a private sale of the premises by joint action of the parties,

then upon compliance with the terms of section 17a of the Divorce Act, the circuit court may proceed with a judicial sale of the marital home. This cause is, therefore, affirmed, but is remanded for further proceedings relating to the disposition of the rights and interests of the parties in the marital home, with such further proceedings to be had in accordance with the views expressed in this opinion.

Issue affirmed and remanded for further proceedings.

STENGEL and BARRY, JJ., concur.